THE STATE v. BRECKENRIDGE.

1. **Criminal Law**: UTTERING FORGED NOTE: EVIDENCE OF THE POSSESSION OF OTHER LIKE NOTE. On the trial of an indictment for uttering a forged note, after the state had introduced evidence tending to show that the note was forged, it was allowed, against defendant's objection, for the purpose of showing that defendant knew that it was forged, to introduce the evidence of a witness who testified that defendant had, about the time the alleged crime was committed, another forged note purporting to be signed by the same persons, which he had seen, and that the signatures to it were, in his opinion, in the same handwriting as those to the note referred to in the indictment. *Held* that it was error to admit such testimony without the production of the note referred to by the witness.

REED and ROTHROCK, JJ., *dissenting*.

*Appeal from Audubon District Court.*

THURSDAY, OCTOBER 22.

THE defendant was convicted of the crime of uttering and publishing a forged promissory note with intent to defraud. Judgment having been rendered upon the verdict, he appeals to this court.

*Andrews, Stotts & Myers* and *Griggs, Brainard & Griggs*, for appellant.

*A. J. Baker, Attorney-general*, for the State.

ADAMS, J.—The note alleged to be forged purported to be signed by T. Bartley and James Bartley. The state introduced evidence tending to show that the note was forged, and afterwards, for the purpose of showing that the defendant had knowledge that it was forged, it attempted to show that at or about the time of the transaction in question the defendant had in his possession another note purporting to be signed by T. Bartley and James Bartley, and that it was forged. The note was not produced, but one Campbell was called by the state as a witness, and was allowed, against the objection of the defendant, to testify in relation to such note. His testimony was to the effect that he had seen such note, and that in his opinion the signatures to it were in the same handwriting as the signatures to the note upon which the indictment is based.

In allowing such evidence without the production of the note, we think that the court erred. If the note had been produced, it may be that a mere comparison of the signatures would have been sufficient to rebut Campbell's testimony. But if not, it was the defendant's privilege to examine witnesses in regard to the genuineness of the signatures, and the production of the note was necessary for this purpose.

We do not say that Campbell's testimony would have

been admissible if the note had been produced. Upon that question we might not be agreed, but we are clear that it was inadmissible without the production of the note.

Some other questions are presented, but they are not of such a character as to arise upon another trial. For the error pointed out the case must be remanded.

REVERSED.

REED, J., *dissenting.*—The holding of the majority is that the state was not entitled to introduce in evidence the opinion of the witness Campbell that the signatures to the note to which he referred were in the same handwriting as the signatures to the instrument on which the indictment is based, for the reason that the note was not produced, and a comparison of the signatures could not be made, and other witnesses could not be examined with reference to the genuineness of the signatures to said notes. The evidence shows that defendant had the note in his possession and delivered it to the witness Campbell (who is cashier of a bank) as collateral security, and that it was obtained from the witness by defendant's wife after the indictment was found. The state, therefore, could not produce it, as it could not compel either the defendant or his wife to deliver it up, or produce it on the trial. It is, therefore, under the rule laid down by the majority, deprived of important testimony because it cannot produce the instrument to which it refers; the instrument being in the possession or under the control of the defendant. In my opinion such a rule ought not to obtain in any case. It enables the accused to deprive the state of testimony having an important bearing on the case, simply by suppressing or destroying the instrument to which it relates. It is not essential to the protection of any of the legal rights of the accused, and its only effect is to embarrass or defeat the administration of justice. The rule is not only without the support of reason, but, so far as my examination has gone, finds no support in the authorities.

ROTHROCK, J., concurs in this dissent.